IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No.   20-cr-00098-GPG

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. MEGAN HESS,
2. SHIRLEY KOCH,

    Defendants.

FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO
3/12/2020
JEFFREY P. COLWELL, CLERK

# INDICTMENT

The Grand Jury charges:

## COUNTS 1-6

### BACKGROUND

1.    Sunset Mesa Funeral Foundation, Inc. ("SMFF"), was a nonprofit corporation incorporated in the State of Colorado. SMFF was purportedly "organized exclusively for charitable, religious, educational and scientific purposes" and its purpose was purportedly to "provide assistance to community members who have no resources for funeral/cremation services." SMFF was formed by defendant MEGAN HESS ("HESS") on or about May 4, 2009. HESS dissolved SMFF on or about February 7, 2018.

2.    On or about May 28, 2009, HESS created a Trade Name for SMFF known as Donor Services. Donor Services' primary source of income was harvesting and marketing for sale purportedly donated human remains, such as heads, torsos, arms,

legs, or entire human bodies, to customers who used the remains for scientific, medical, or educational purposes (hereinafter referred to as "body broker services"). At all times relevant to this indictment, HESS operated her body broker services business under the name Donor Services out of the same location as a funeral business operating under the name Sunset Mesa Funeral Directors in Montrose, Colorado.

3. On or about September 14, 2011, HESS purchased SMFD on behalf of SMFF. The following day, HESS registered the Trade Name "Sunset Mesa Funeral Directors" (hereinafter "SMFD") for SMFF. From that date, and continuing until February 6, 2018, HESS owned and operated a funeral home providing burial and cremation services under the SMFD name.

4. HESS was in charge of, and handled most aspects of, SMFD and Donor Services. In particular, HESS met with families seeking funeral services from SMFD, discussed the disposition of the deceased, and made funeral arrangements. With regard to Donor Services, HESS handled most of the advertisement, invoicing, and shipping arrangements, and dealt directly with the end-users or purchasers of purportedly "donated" human remains.

5. Defendant SHIRLEY KOCH ("KOCH") assisted HESS in many of these aspects related to the operation of SMFD and Donor Services. KOCH was involved in meeting with families to discuss the disposition of deceased individuals, and processing and preparing bodies for body broker services.

## THE SCHEME

6. Beginning in or about 2010, and continuing to on or about February 6, 2018, in the State and District of Colorado and elsewhere, the defendants, HESS and KOCH, devised and intended to devise a scheme and artifice to defraud and to obtain money and property from decedents, their families or representatives, and other customers by means of materially false and fraudulent pretenses, representations, and promises (hereinafter "the scheme"), and aided and abetted the same.

7. It was part of the scheme that:

   a. Often HESS, and on occasion KOCH, would meet with families seeking cremation services for their loved ones who had died. During these meetings, HESS and KOCH represented to the families, as the families had requested, that SMFD would cremate the decedents and provide their cremated remains (hereinafter "cremains") back to the families.

   b. In many instances, HESS and KOCH neither discussed nor obtained authorization for donation of decedents' bodies or body parts for body broker services. In other instances, the topic of donation was raised by HESS or KOCH, and specifically rejected by the families. In such circumstances, despite lacking any authorization whatsoever, HESS and KOCH harvested body parts from, or otherwise prepared entire bodies of, hundreds of decedents for body broker services.

   c. Some families agreed to donation. Frequently these families believed, based on representations from HESS or KOCH, that only small

samples, such as tumors or portions of skin, would be taken for testing or research.  Other families believed, based on representations from HESS or KOCH, that donated remains would be used to treat living recipients.  Still others only authorized donation of specific body parts, such as specific organs, but specifically denied donation for anything else.  Frequently, in such circumstances, HESS and KOCH exceeded the authorization they obtained. Remains would be sold for purposes not contemplated by the families; and body parts beyond those which were authorized, if not entire bodies, would be sold. In each of these instances, the families would not have authorized donation had they been informed of what would actually be done with their loved one's remains.

      d.     The income derived from the body broker services business allowed HESS to advertise rates for cremations that often made SMFD the least expensive option in the area.  As a result, HESS was able to ensure a constant supply of bodies for her and KOCH's body broker services business.  HESS or KOCH would also, at times, offer free or reduced rate cremations to incentivize families to agree to donation of their loved ones' remains.

      e.     HESS, KOCH, or an employee of SMFD at their request, would provide cremains to families, representing that the cremains delivered were that of the decedent.  In reality, this frequently was not the case.  In many instances, a decedent's entire body was sold through Donor Services.  Nevertheless, the families were charged, and paid typically $1000 or more, for a cremation that

never occurred. These families would receive cremains replaced or supplemented by HESS or KOCH with the cremains from another person or persons. The families relied on the representation that the cremains they received were that of their loved ones in making final arrangements.

  f. HESS advertised the remains offered by Donor Services to customers of her body broker services business as legitimately and freely donated when this often was not the case. In order to support such claims, HESS developed "Donor Authorization" forms that purportedly would be signed by the families of decedents when authorizing donation. In dozens of instances, records maintained by HESS and KOCH for Donor Services and SMFD contained "Donor Authorization" forms that had forged signatures indicating a donation was authorized when that had never occurred. In hundreds of other instances, the records maintained by HESS and KOCH contained no "Donor Authorization" form at all, yet the decedents' remains were nevertheless sold through Donor Services. All of the customers of Donor Services relied on HESS's representations that the remains they purchased were legitimately donated. These customers would not have purchased the remains HESS sold had they known that the remains were not, in fact, donated and had instead been stolen.

  g. Many of the customers of Donor Services also required that the remains they received be free of particular infectious diseases, namely HIV and Hepatitis. KOCH would frequently draw blood from decedents whose remains

were to be sold and submit that blood for testing.   In dozens of instances, HESS or KOCH received results indicating the remains tested positive for these diseases.   Rather than inform Donor Services' customers of this fact, HESS frequently sent these customers altered laboratory reports indicating the remains tested negative for the infectious diseases.   These customers relied on these representations and would not have purchased the remains had they known that the remains were infected with these diseases.

  h. In order to fraudulently increase their profits, HESS and KOCH shipped, or caused to be shipped, human remains from decedents who tested positive for, or died from, infectious diseases through the mails and on commercial air flights in violation of Department of Transportation Regulations.

  i. In total, HESS and KOCH received hundreds of thousands of dollars for human remains sold through Donor Services that were either fraudulently obtained and represented as freely donated, or were otherwise fraudulently represented as free of infectious diseases when that was not the case.

<u>THE MAILINGS</u>

  8. On or about the dates set forth below, for the purposes of executing the scheme, the defendants, MEGAN HESS and SHIRLEY KOCH, deposited and caused to be deposited to be sent and delivered by a private and commercial interstate carrier, and knowingly caused to be delivered by a private and commercial interstate carrier according to the direction thereon and at the place at which it was directed to be

delivered by the person to whom it was addressed, the following matters as described below:

| COUNT | DATE RANGE | DESCRIPTION OF MAILINGS |
|---|---|---|
| 1 | April 22-24, 2015 | A shipment containing the fraudulently obtained remains of J.B., V.H., B.H., S.M., C.S., R.S., R.L., E.F., R.E., S.M., and A.J.; and the infected remains of R.D. |
| 2 | March 14-16, 2016 | A shipment containing the fraudulently obtained remains of F.C., R.K., R.H., D.J., and V.I. |
| 3 | January 17-19, 2017 | A shipment containing the fraudulently obtained remains of R.E., R.R., J.L., G.M., L.C., L .L., E.H., and S.H.; and the fraudulently obtained and infected remains of R.M. |
| 4 | February 15-17, 2017 | A shipment containing the fraudulently obtained remains of A.M. and R.L., and the fraudulently obtained and infected remains of D.L. |
| 5 | May 16-18, 2017 | A shipment containing the fraudulently obtained remains of R.R., M.G., A.B., L.M, and P.W.; and the fraudulently obtained and infected remains of M.W. |
| 6 | June 26-28, 2017 | A shipment containing the fraudulently obtained remains of L.T., G.S., and D.M. |

All in violation of Title 18, United States Code, Sections 1341, and Title 18, United States Code, Section 2.

## Count 7

9.  The allegations of paragraphs 1 through 6 are included herein.

10. On or about April 22-24, 2015, in the State and District of Colorado and elsewhere, the defendants, MEGAN HESS and SHIRLY KOCH, willfully caused to be delivered property containing Category B biological material as regulated by the Department of Transportation—namely a human head from the remains of R.D., an individual known to have tested positive for Hepatitis C—to United Airlines Cargo, an air

carrier, for transportation in air commerce and recklessly caused such property to be transported in air commerce in violation of regulations or requirements prescribed under Federal Regulations, that is 49 CFR § 175.3, 49 CFR § 171.2, 49 CFR § 173.134, and 49 CFR § 173.199.

11. In violation of these regulations, the shipment containing the head was not properly marked or labeled.

12. All in violation of Title 49, United States Code, section 46312, and Title 18, United States Code, Section 2.

## Count 8

13. The allegations of paragraphs 1 through 6 are included herein.

14. On or about January 17-19, 2017, in the State and District of Colorado and elsewhere, the defendants, MEGAN HESS and SHIRLY KOCH, willfully caused to be delivered property containing Category B biological material as regulated by the Department of Transportation—namely a human head, spine, and legs from the remains of R.M., an individual known to have tested positive for Hepatitis C—to American Airlines Cargo, an air carrier, for transportation in air commerce and recklessly caused such property to be transported in air commerce in violation of regulations or requirements prescribed under Federal Regulations, that is 49 CFR § 175.3, 49 CFR § 171.2, 49 CFR § 173.134, and 49 CFR § 173.199.

15. In violation of these regulations, the shipment containing the head was not properly marked or labeled.

16. All in violation of Title 49, United States Code, section 46312, and Title 18, United States Code, Section 2.

## Count 9

17. The allegations of paragraphs 1 through 6 are included herein.

18. On or about February 15-17, 2017, in the State and District of Colorado and elsewhere, the defendants, MEGAN HESS and SHIRLY KOCH, willfully caused to be delivered property containing Category B biological material as regulated by the Department of Transportation—namely a human head from the remains of D.L., an individual known to have tested positive for Hepatitis C—to American Airlines Cargo, an air carrier, for transportation in air commerce and recklessly caused such property to be transported in air commerce in violation of regulations or requirements prescribed under Federal Regulations, that is 49 CFR § 175.3, 49 CFR § 171.2, 49 CFR § 173.134, and 49 CFR § 173.199.

19. In violation of these regulations, the shipment containing the head was not properly marked or labeled.

20. All in violation of Title 49, United States Code, section 46312, and Title 18, United States Code, Section 2.

## FORFEITURE ALLEGATION

21. The allegations contained in Counts 1 through 6 of this Indictment are hereby re-alleged and incorporated herein by reference for the purpose of alleging forfeiture pursuant to the provisions of Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

22.     Upon conviction of the violations alleged in Counts 1 through 6 of this Indictment involving violations of Title 18, United States Code, Section 1341, the defendants, MEGAN HESS and SHIRLEY KOCH, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c) any and all of the defendants' right, title, and interest in all property constitution and derived from any proceeds obtained directly and indirectly as a result of such violations, including, but not limited to:

   a. A money judgment in the amount of proceeds obtained by the scheme and by the defendants;

   b. 2108 Devon Street, Montrose, Colorado 81401, more specifically identified as:

      ENGLISH GARDENS ADDN NO 3 Block: 3 Lot: 7 S: 35 T: 49 R: 9;

   c. 165 Merchant Drive, Montrose, Colorado 81401, more specifically identified as:

      COURT PARK FILING NO 2 Lot: 4 S: 20 T: 49 R: 9; and

   d. 2011 GMC Yukon, VIN: 1GKS2MEF7BR255058.

23. If any of the property described above, as a result of any act or omission of the defendants:

   a. cannot be located upon the exercise of due diligence;
   b. has been transferred or sold to, or deposited with, a third party;
   c. has been placed beyond the jurisdiction of the Court;
   d. has been substantially diminished in value; or
   e. has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of said defendants up to the value of the forfeitable

property.

                                        A TRUE BILL


                                        <u>Ink signature on file in Clerk's Office</u>
                                        FOREPERSON


JASON R. DUNN
United States Attorney

 <u>s/ Jeremy Chaffin</u>
JEREMY CHAFFIN
Assistant United States Attorney
United States Attorney's Office
205 North 4th Street, Suite 400
Grand Junction, CO 81501
Tel: (970) 257-7113
Fax: (970) 248-3630
E-mail: jeremy.chaffin@usdoj.gov